IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAUREN B. GREVICH,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

OPINION AND ORDER

18-cv-418-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Lauren Grevich is seeking review of a final decision by defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying her claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff seeks remand of that decision, arguing that the administrative law judge who decided the case did not give adequate consideration to the opinions of her treating physicians or the third-party statements of her mother and boyfriend. For the reasons explained below, I am not persuaded by plaintiff's arguments. Therefore, I will affirm the acting commissioner's decision.

The following facts are drawn from the administrative record (AR).

FACTS

Plaintiff Lauren Grevich contends that she became disabled on October 1, 2013 because of a variety of physical conditions, including chronic neck and left arm pain. AR 13, 15, 35. Her pain began on July 15, 2010, when she injured herself at work carrying a large bucket of fish as a biological technician with the United States Fish and Wildlife Service.

AR 19, 59, 358. She continued working, but four to five months later, she developed tingling and weakness in her left arm. AR 79, 358.

Plaintiff has been employed regularly since 2002. She last worked from January 2011 to August 2014 as a property manager at a private estate. AR 59. She resigned from that position after her son was born in June 2014. AR 16, 36. Plaintiff was 30 years old when she applied for benefits on October 6, 2014. AR 13.

A. Relevant Medical Evidence

1. Treating physicians

Plaintiff continued to experience neck and left arm and shoulder pain after injuring herself at work in 2010. Her physicians ordered various nerve conduction studies, x-rays and magnetic resonance imaging studies between 2010 and 2013. AR 717. The nerve studies revealed only mild denervation at C6 on the left side and mild ulnar radiculopathy at the left elbow but no significant nerve damage. AR 717-19. Her imaging studies showed osteophytosis, disc disease and protrusion and mild to moderate neural foraminal narrowing in portions of her cervical spine (the C5, C6 and C7 vertibrae). Id.

On March 15, 2012, plaintiff saw Dr. Jane Stark, who performed an independent medical examination for plaintiff's worker's compensation claim. AR 357. Dr. Stark noted that plaintiff had been diagnosed with cervical disc disease and ulnar neuropathy and had symptoms of myofascial pain, but Dr. Stark found significant inconsistencies in plaintiff's history and examination. For example, plaintiff's examination revealed no difference in tone

2

or strength in her upper extremities, which did not support plaintiff's reports of significant weakness and reduced use of her left arm. Dr. Stark also noted that plaintiff reported very high levels of pain but exhibited no guarding or pulling away. Dr. Stark told plaintiff that she suspected a psychological component to her symptoms, but plaintiff stated that she would rather "be dead" than talk with a psychologist. AR 362. Plaintiff also stated that she would rather have surgical intervention than medications or steroid injections. Id. Dr. Stark did not provide plaintiff with a disability rating and would not recommend any treatment unless plaintiff first agreed to a psychological evaluation. AR 363.

On May 15, 2013, plaintiff saw Dr. Kamal Thapar for a neurosurgical consult for neck and left arm pain. AR 376. He recommended that plaintiff have a steroid injection in her cervical spine and noted surgery as a possible future option. AR 378. After receiving an injection, plaintiff saw Dr. Thapar again on June 25, 2013 and reported no change in her symptoms. AR 386. Although plaintiff was uncomfortable and had a reduced range of motion in her cervical spine (45 degrees on either side), her examination was otherwise normal with respect to strength, tone and weakness. Id. Dr. Thapar stated that surgery should be an option of last resort and told plaintiff that her failure to respond to non-operative pain management made him question whether she would respond well to surgery. He recommended a second steroid injection, which plaintiff never had. AR 387, 404.

Plaintiff saw Dr. Thapar again on August 14, 2013, reporting no substantial change in her symptoms and no relief from pain medications that she had tried in the past. Dr.

Thapar prescribed Lyrica and referred plaintiff to the Mayo Clinic for a second opinion. AR 390-91.

On September 10, 2013, plaintiff was evaluated by Dr. Jeffrey Brault at the Mayo Clinic. AR 404. Plaintiff reported constant neck and left arm pain of variable intensity for which she had unsuccessfully tried chiropractic manipulation, physical therapy, massage and various medications. Plaintiff had not tried the Lyrica that Dr. Thapar prescribed. Id. Plaintiff had normal strength and reflexes bilaterally, but decreased sensation in her left hand and limited range of motion in her neck. AR 405. Dr. Brault ordered further x-rays of her cervical spine, nerve studies and an ultrasound of her ulnar nerve. AR 405-06.

The ultrasound showed a dislocating ulnar nerve, the nerve studies were normal and showed no cervical or ulnar radiculopathy and the x-rays showed loss of cervical lordosis (or curvature), minimal disc degeneration and anterolisthesis (slippage) at the C4 and C5 vertibrae. AR 402, 407-08. Dr. Brault reviewed these findings with plaintiff on October 2, 2013, and referred her to an elbow surgeon to discuss possible ulnar nerve transposition. AR 402. The day before, plaintiff had refused to be evaluated for a pain management program recommended by Dr. Brault at the Mayo Clinic. AR 403. Plaintiff did not follow up on the surgical consultation because she became pregnant. AR 588.

In September 2014, plaintiff began seeing Dr. Megan Popp for her neck and arm pain. Plaintiff reported having a 10-pound lifting restriction and recently quitting her job because her pain increased again after giving birth about three months prior. AR 584. On October 1, 2014, Dr. Popp referred plaintiff for an orthopedic evaluation for possible ulnar

4

nerve surgery and a functional capacity evaluation with a physical therapist. AR 588. Dr. Popp noted that plaintiff had never had a formal functional capacity or "workability status" evaluation other than plaintiff's self-report of a 10-20 pound lifting restriction. Id.

On November 5, 2014, plaintiff saw Dr. Benjamin Nelson, an orthopedist, for her ulnar nerve subluxation. AR 660. Her left elbow was normal on examination but she showed pain over the cubital tunnel. Dr. Nelson recommended elbow splinting and exercises, but plaintiff declined both. He referred her to an orthopedic surgeon to discuss possible ulnar nerve transposition surgery. AR 661.

On November 24, 2014, plaintiff saw Dr. Jeffrey Klassen, an orthopedic surgeon, for a consultation on left elbow pain. AR 663. Upon examination, plaintiff had a subluxing left ulnar nerve (or partial dislocation) and a positive Tinel's sign (showing irritation) in her ulnar nerve extending in to her fingers, but she had an excellent range of motion in her elbow, wrist and hand. Dr. Klassen recommended subcutaneous ulnar nerve transposition (or surgical relocation of the nerve). AR 664.

On December 10, 2014, plaintiff reported to Dr. Popp that she was considering the surgery recommended by Dr. Klassen but may put it off until her son is older and that she could not afford the functional capacity evaluation offered by the physical therapist. AR 672. Plaintiff also reported a recent flare in her neck pain for which she tried taking naproxen and methocarbamol over the past few days. The medication took the edge off her pain, and she also had a prescription for a Flector pain patch. Id. Dr. Popp continued her prescription for methocarbamol for use with the pain patch during pain flare ups. AR 673.

5

On January 8, 2015, plaintiff saw Dr. Lynn Quenemoen for an occupational medicine assessment and impairment rating for her worker's compensation claim. AR 717. Plaintiff reported having constant, severe pain in her left arm and shoulder. Id. On examination, she had full neck rotation with discomfort, reduced bending on the left side of her neck, a positive Spurling maneuver (showing nerve pain in left neck, shoulder and arm), modest tenderness in the left cubital tunnel, moderate tenderness in the left neck and shoulder girdle, no signs of impingement and full range of motion in both shoulders, elbows, wrists and fingers. AR 721. Dr. Quenemoen reviewed plaintiff's 2011 and 2013 imaging studies and nerve test results and found that plaintiff has chronic recurrent left ulnar nerve subluxation and cubital tunnel syndrome, resulting in a six percent disability rating in her left upper extremity and an eight percent rating for her cervical condition. AR 721-22.

2. State agency physician opinions

During the initial review of plaintiff's application for benefits, Dr. Pat Chan reviewed plaintiff's medical records and concluded on November 26, 2014 that plaintiff could perform light work, which is defined in the regulations as lifting no more than 20 pounds at a time and frequent lifting or carrying of up to 10 pounds. 20 C.F.R. § 404.1567(b). On June 23, 2015, at the reconsideration level of review, Dr. Arvind Chopra affirmed Dr. Chan's findings. AR 115.

B. Administrative Hearing

On April 11, 2017, Administrative Law Judge William Brown held an administrative hearing at which plaintiff, a medical expert and a vocational expert testified. AR 32-33. Plaintiff testified that her left arm and hand are very weak and numb, which prevents her from lifting anything more than 10 pounds and significantly reduces her ability to do any activity for too long, including fingering, grabbing, reaching, standing, walking or lying down. AR 36-37, 42-46. She is always in pain, which ranges from a six to a 10 out of 10. AR 37, 41. Plaintiff testified that she is able to cook, do some stretching and take some pictures as an amateur photographer, but she does only minimal household chores. AR 39-40, 47. Although she was offered surgery for her arm and cervical vertibrae, she believes that those surgeries present too many risks and would not guarantee her better functioning. AR 37-38. Plaintiff testified that at least prior to her onset date in 2013, she tried Lyrica, a pain patch and physical and massage therapy but nothing helped. AR 49-50.

During his testimony, Dr. Jared Franzin summarized the key medical findings in plaintiff's record and stated that she could perform light level work with the following limitations: no more than frequent use of hand controls with the left hand, climbing stairs and ramps, balancing, stooping, kneeling, crouching and reaching with the left arm; occasional crawling and reaching overhead or feeling with the left arm; no climbing ladders, ropes and scaffolds; occasional exposure to extreme cold; and no exposure to hazardous machinery, unprotected heights or vibration. AR 53-57.

C. <u>Administrative Decision</u>

The administrative law judge issued a written decision on May 18, 2017, finding that plaintiff was severely impaired by degenerative disc disease of the cervical spine, peripheral neuropathy, ulnar nerve disorder, numbness and sensory issues in the left hand and chronic pain syndrome.  AR 16.  The administrative law judge further found that plaintiff retained the residual functional capacity to perform sedentary work with the following limitations: occasional stooping, kneeling, crouching, kneeling and crawling; no climbing ladders, ropes and scaffolds; no work around heights, hazards or hazardous machinery; avoiding exposure to extreme cold and vibration; no more than occasional reaching overhead with the left arm; and no more than frequent use of hand controls or handling and fingering with the left hand.  AR 18.

The administrative law judge stated that the above restrictions were based in part on the opinions of the state agency physicians and the medical expert, Dr. Franzin, who all recommended light level work for plaintiff with less restrictive limitations than those found by the administrative law judge.  AR 19.  The administrative law judge stated that "[o]verall, the objective findings, examinations, observations by providers, mental status examinations, course of treatment, medications, and overall functioning support the residual functional capacity assessment."  Id.  (He made several specific findings with respect to the medical evidence that I discuss in more detail below.  AR 19-21.)  The administrative law judge stated that even though some physicians and counselors (including Dr. Quenemoen) found that plaintiff had deficits or disability ratings that prevented her from returning to full time

8

work, he was "not able to give these opinions weight based on the fact that they are not consistent with treatment notes, in particular, with each provider." AR 22.

The administrative law judge found plaintiff's testimony about her alleged symptoms "not entirely consistent with the medical evidence and other evidence in the record," AR 19, including her limited and conservative treatment, the effective control of her symptoms with medication, physical examinations that did not support disabling symptoms and limitations and plaintiff's daily activities. AR 21. He cited plaintiff's ability to cook, make her own meals, do some exercising and be involved in amateur photography. AR 19. Although he considered the written statements provided by plaintiff's mother and boyfriend, he gave them little weight because they are not trained to make "exacting observations" about medical signs and symptoms, are not disinterested third parties and "most importantly, . . . they are simply not consistent with the preponderance of the opinions and observations by medical doctors, discussed in detail above." AR 22.

The administrative law judge determined that plaintiff could perform her past work as a circulation crew chief in the same manner that she had previously performed that position (semi-skilled and sedentary work). Relying on the testimony of a vocational expert who testified in response to a hypothetical question based on plaintiff's residual functional capacity assessment, the administrative law judge also found that jobs existed in significant numbers in the national economy that plaintiff could perform, including order clerk, telemarketer, security monitor, document preparer and electronic assembler. AR 24.

OPINION

In reviewing an administrative law judge's decision, I must determine whether the decision is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." Id. See also Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009) (administrative law judge need not discuss every piece of evidence but "must build a logical bridge from evidence to conclusion"); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review.").

Plaintiff contends that the administrative law judge in this case erred in two respects: (1) not providing adequate reasons for rejecting the opinions of her treating physicians; and (2) failing to properly consider the third-party statements of her mother and boyfriend. I will discuss each argument separately.

A. Treating Physician Opinions

Plaintiff argues generally that the administrative law judge failed to consider the opinions of her treating physicians in developing his residual functional capacity assessment.

Under the law applicable at the time of plaintiff's hearing, the treating physician opinions are entitled to controlling weight if they are supported by objective medical evidence and consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013). Although an administrative law judge is not required to give a treating physician's opinion controlling weight, he is required to provide a sound explanation for rejecting it. Id.; Hall ex re. Hall v. Astrue, 489 Fed. Appx. 956, 958 (7th Cir. 2012) ("An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight."). Further, "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing "checklist" of factors in 20 C.F.R. § 404.1527).

Plaintiff says that the administrative law judge did not identify what portions of the medical evidence are inconsistent with her alleged disabling symptoms or explain why the treatment she received was not enough. However, the administrative law judge devoted almost three pages of his written opinion to summarizing the results of plaintiff's tests and imaging studies and the findings noted by her primary medical providers, including Drs. Stark, Thapar, Brault, Popp, Quenemoen, Nelson and Klassen. AR 19-21. It is clear from the administrative law judge's written opinion that he was aware of and considered the

11

physicians' past treatment of plaintiff, their specialities, the tests they performed and whether their observations were consistent with the medical evidence and plaintiff's activities. Schreiber v. Colvin, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (noting same). A review of the medical record shows that the administrative law judge accurately summarized the physicians' medical findings and reasonably concluded that plaintiff was not as limited as she claimed. Almost all of plaintiff's physical examinations were normal and did not show significant differences between plaintiff's right and left arms.

More importantly, as defendant points out, plaintiff does not identify specific work-related limitations from any provider that the administrative law judge failed to consider. In the absence of any medical evidence establishing contrary functional limitations, the administrative law judge was entitled to base his residual functional capacity assessment on the opinions of Dr. Franzin and the state agency consultants. 20 C.F.R. § 416.927(e)(2)(i) (state agency physicians are highly qualified experts in Social Security disability evaluation); Molnar v. Astrue, 395 Fed. Appx. 282, 288 (7th Cir. 2010) (no error where claimant did not identify any medical evidence undermining state agency physician opinion on which residual functional capacity assessment was based); White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) (administrative law judge may rely on medical expert's testimony, particularly when buttressed by state agency medical consultant's findings).

Plaintiff argues that her "treating physician's findings (compressed/bulging discs) [would] have resulted in a more limited RFC." Dkt. #10 at 29. However, plaintiff has not produced evidence that any of her treating physicians actually reached that conclusion.

Rather, she attaches to her supporting brief several excerpts from her medical records and a lengthy summary of those records. It is not the court's role to search the medical record for evidence that supports plaintiff's claim; plaintiff bears the burden of producing medical evidence that supports her claims of disability. Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2008). Without more, plaintiff has not meaningfully developed her argument that the administrative law judge erred in analyzing the opinions of her treating physicians.

In any event, a review of the progress notes attached to plaintiff's brief shows that her physicians simply documented her self-reported symptoms and limitations and did not reach their own conclusions with respect to her limitations. In fact, Dr. Stark specifically questioned whether plaintiff's self-reported symptoms were as severe as she claimed, and Dr. Popp noted that no medical provider had assessed plaintiff's functional capability. The administrative law judge explained why he did not credit plaintiff's subjective symptoms, and plaintiff has not challenged this finding.

Plaintiff is correct that the administrative law judge seems to overstate her daily activities and the effectiveness of her medication. Although he noted that plaintiff was able to cook, exercise and do amateur photography and that her medication was "relatively effective" in controlling her physical symptoms, plaintiff made clear in her testimony that she performed the activities on a very limited basis while in pain and that medication and steroid injections did not relieve her pain. Although plaintiff is correct that the administrative law judge's findings are not entirely accurate, they do not require remand. The administrative law judge did not rely heavily on either finding in considering the treating physician reports

or even in discounting plaintiff's subjective symptoms. His focus was on the medical evidence and whether it supported plaintiff's alleged symptoms. Further, there is some evidence that plaintiff was experiencing relief from the medications she was prescribed in December 2014. In addition, the administrative law judge correctly noted that plaintiff's treatment was conservative and limited, which is in large part due to plaintiff's general refusal to take medication or participate in pain management strategies.

In sum, the administrative law judge's analysis of plaintiff's treating provider opinions does not provide a basis for remand. Even if the administrative law judge could have reached a different conclusion regarding plaintiff's residual functional capacity, he adequately explained his reasons for not finding her symptoms to be disabling and supported his findings with substantial evidence.

## B. Third-Party Statements

Although plaintiff criticizes the administrative law judge for not giving adequate consideration to her mother's and boyfriend's statements about her condition, the administrative law judge discussed both statements and provided good reasons for not assigning them significant weight. He noted that plaintiff's mother and boyfriend were not medically trained to make exacting observations, they were not disinterested third parties and their observations were "simply not consistent" with the opinions and observations from plaintiff's doctors.

Plaintiff correctly notes that an administrative law judge cannot disregard a third-party statement merely because the author is not medically trained or is related to the claimant. Smith v. Colvin, 9 F. Supp. 3d 875, 889 (E.D. Wis. 2014) (. ("The ALJ should not . . . simply presume that the lay witness is biased based on his or her relationship to the claimant and ignore the testimony on that basis."); Behymer v. Apfel, 45 F. Supp. 2d 654, 663 (N.D. Ind. 1999) ("Descriptions of friends and family members who were in a position to observe the claimant's symptoms and daily activities have been routinely accepted as competent evidence."); 20 C.F.R. § 404.1529(c)(1) (effective Jun. 13, 2011 to Mar. 26, 2017) ("[W]e consider all of the available evidence, including . . . statements from . . . other persons about how your symptoms affect you."). However, the administrative law judge explained that the statements were not consistent with the medical evidence of record. Arnold v. Barnhart, 473 F.3d 816, 822 (7th Cir. 2007) (claimant's neighbors not competent to refute professional medical testimony); 20 C.F.R. § 404.1529(c)(3) (symptom-related functional limitations and restrictions reported by other persons taken into account if they "can be reasonably accepted as consistent with the objective medical evidence"). Moreover, the statements were largely duplicative of plaintiff's own testimony, which the administrative law judge discounted. (Plaintiff has not raised a direct challenge to the administrative law judge's evaluation of her subjective complaints.) Accordingly, I find that the administrative law judge satisfied his burden of considering the lay witness statements and explaining why he did not accept them.

ORDER

IT IS ORDERED that the decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Lauren Grevich's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 11th day of February, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge